UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERNEST DAVIS, LISA COPELAND, RAYMOND
COPELAND JR., RAY COPELAND SR., KOHAIN
NATANY A. HALEVI, THOMAS L. TERRY,
ELVIRA CASTILLO, BARBARA PERRY,
DOROTHY EDNA BRINGER, VALERIE
CAMPBELL, OSCAR DAVIS JR., MARLENE
PIEROT, ANGELO SQUITIERI, MARIA ELLIS,   07-Civ. 9897 CLB
DAVIS WILLIAMS, DARYL SELSY,

                    Plaintiffs,
  -against-                                                                   NOTICE OF CLINTON
                                                                       YOUNG'S MOTION TO
UNITED STATES JUSTICE DEPARTMENT,              **DISMISS THE COMPLAINT**
FEDERAL BUREAU OF INVESTIGATION,               **AND FOR SANCTIONS**
UNITED STATES ATTORNEY'S OFFICE,
UNITED STATES ATTORNY'S OFFICE OF THE
SOUTHERN DISTRICT OF NE WYORK, NEW
YORK STATE BOARD OF ELECTIONS,
WESTCHESTER COUNTY BOARD OF
ELECTIONS, CLINTON YOUNG, JANET
SNYDER, JOHN DOE, FEDERAL BUREAU OF
INVESTIGATION AGENTS 1-10,

                    Defendants.
------------------------------------------------------------X

      PLEASE TAKE NOTICE THAT, on the annexed affidavit of Clinton I. Young, Jr. with annexed exhibits sworn to on February 22, 2008, Defendant Clinton Young, the Mayor of Mount Vernon, by his attorney William S. Greenawalt, Esq., will move the Honorable Charles L. Brieant, U.S.D.J. at the United States Courthouse for the Southern District of New York, 300 Quarropas Street, White Plains, New York 10606, on April 11, 2008 at 10:00 a.m. for an order: pursuant to Article III of the United States Constitution, and Rules 12 (b) (1) and (6) of the Federal Rules of Civil Procedure, dismissing the Complaint and the purported causes of action contained therein on the grounds: that the plaintiffs lack standing to bring this action; that the

court lacks subject matter jurisdiction of this action; that the complaint and its purported causes of action fail to state a claim upon which relief may be granted; that its primary purpose of enjoining the inauguration of Mayor Young has been denied and is moot; that the Complaint was brought for improper purposes and is frivolous, unreasonable and not well grounded in fact, and sanctions, including the attorneys' fees, costs and expenses of Mayor Young are appropriate, all as is more fully described in the accompanying Affidavit of Clinton I. Young, Jr. and the accompanying Memorandum of Law.

WHEREFORE, Defendant Clinton I. Young, Jr. prays his motion be granted; that the Complaint be dismissed with prejudice; that pursuant to Rule 11 of the Federal Rules of Civil Procedure judgment be entered for him and against plaintiffs for attorneys' fees, expenses and costs; and for other relief as seems just and proper to the Court.

Dated: White Plains, New York
       February 25, 2008

                                  MCCARTHY FINGAR, LLP

                       By: _____
                              William Greenawalt (WG 0075)
                              Attorney for Defendant Clinton Young
                              11 Martine Avenue, 12th Floor
                              White Plains, New York 10606
                              (914) 946-3700

To:    Stephen C. Jackson, Esq.
        Attorney for Plaintiffs
        350 Fifth Avenue, Suite 2310
        New York, New York 10118
        (212) 643-2394

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERNEST DAVIS, LISA COPELAND, RAYMOND
COPELAND JR., RAY COPELAND SR., KOHAIN
NATANY A. HALEVI, THOMAS L. TERRY,
ELVIRA CASTILLO, BARBARA PERRY,
DOROTHY EDNA BRINGER, VALERIE
CAMPBELL, OSCAR DAVIS JR., MARLENE
PIEROT, ANGELO SQUITIERI, MARIA ELLIS,
DAVIS WILLIAMS, DARYL SELSY,

                             Plaintiff,                **Civ No.:07-9897 CLB**
    -against-

UNITED STATES JUSTICE DEPARTMENT,
FEDERAL BUREAU OF INVESTIGATION,
UNITED STATES ATTORNEY'S OFFICE, NEW
YORK STATE BOARD OF ELECTIONS,
WESTCHESTER COUNTY BOARD OF
ELECTIONS, CLINTON YOUNG, JANET
SNYDER,
                          Defendants.
------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT
## CLINTON YOUNG TO DISMISS THE ACTION

Clinton I. Young, Jr., the Mayor of the City of Mount Vernon and a defendant herein, respectfully submits this Memorandum of Law in support of his motion to dismiss the complaint[*] herein: for lack of standing required by Article III of the Constitution; for the lack of subject matter jurisdiction over this action, required by Rule 12 (b) (1) of the Federal Rules of Civil Procedure; and for its failure to state a claim upon which relief can be granted, required by Rule 12 (b) (6) of the Federal Rules of Civil Procedure; and for attorneys fees and costs of this frivolous litigation.

---

[*] The Docket Clerk's file includes the complaint and the amended complaint. They are nearly identical, and will be referred to collectively herein as the "complaint" unless otherwise noted. The complaint states that "jurisdiction is founded upon 28 U.S.C. §§1331 and 1341 (3) and (4)". 28 U.S.C. §1341 is "taxes by States", has no subheads, and is inappropriate. Mr. Jackson may well mean §1343 (a) (3) and (4).

{00059951.DOC.}                                                1

## PLAINTIFFS LACK STANDING TO BRING THIS ACTION

The complaint and the amended complaint contain no allegation that the named plaintiffs, or any of them, did not vote in the November 6, 2007 general election. As set forth in the February 22, 2008 affidavit of Clinton I. Young, according to records of the Board of Elections of Westchester County, they <u>all</u> voted. Hence, none of them is a proper plaintiff, and plaintiffs lack standing to bring this action.

Several named plaintiffs have stated publicly that they did not wish to be plaintiffs at any time and gave no consent to the use of their names, and/or that they have requested that their names be removed as plaintiffs. Three have been removed by Court order, but the complaint caption still reflects them as plaintiffs.

The requirements for standing are set forth in the United States Supreme Court's decision in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560, 561 (1992):

> "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III. See, e.g., <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984).
>
> Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, see <u>id</u>., at 756; <u>Warth v. Seldin</u>, 422 U.S. 490, 508 (1975); <u>Sierra Club v. Morton</u>, 405 U.S. 727, 740-741, n. 16 (1972)* [* By particularized use we mean that the injury must affect the plaintiff in a personal and individual way]; and (b) "actual or imminent, not 'conjectural' or 'hypothetical'", <u>Whitmore</u>, <u>supra</u>, at 155 (quoting <u>Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983)). Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly…trace[able] to the challenged action of the defendant, and not…th[e] result [of] the independent action of the defendant, and not…th[e] result [of] the independent action of some third party not before the court." <u>Simon v. Eastern Ky. Welfare Rights Organization</u>, 426 U.S. 26, 41-42 (1976). Third, it must be "likely", as opposed to merely "speculative", that the injury will be "redressed by a favorable decision." <u>Id</u>., at 38, 43.

The party invoking federal jurisdiction bears the burden of establishing these elements. See <u>FW/PBS, Inc. v. Dallas</u>, 493 U.S. 215, 231 (1990); <u>Warth</u>, <u>supra</u>, at 508. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, <u>i.e.</u> with the manner and the degree of evidence required at the successive stages of the litigation. See <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 883-889- (1990); <u>Gladstone, Realtors v. Village of Bellwood</u>, 441 U.S. 91, 114-115, and n. 31 (1979); <u>Simon</u>, <u>supra</u>, at 45, n. 25; <u>Warth</u>, <u>supra</u>, at 527 and n. 6 (Brennan, J., dissenting)."

Failure by plaintiffs to meet any one of these requirements is fatal to their action. Here they fail to meet all three.

First, plaintiffs suffered no "injury in fact". All of them voted, presumably for Mr. Davis. None of them was "intimidated"; their votes were not dictated, vitiated, negated or superseded (compare Complaint ¶32). No legally protected right of theirs was invaded. There was "no particularized" injury to them, nothing that affected them "in a personal and individual way". They were not injured in any "actual or imminent way".

In <u>Warth v. Seldin,</u> 422 U.S. 490 (1975), various kinds of plaintiffs challenged the Town of Penfield's new zoning ordinance on the basis that, as enforced, it effectively excluded persons of low and moderate income from living in the town in violation of 42 U.S.C. §§1981, 1982 and 1983. As to the claims of four petitioners, each of whom asserted standing "as a person of low or moderate income, and coincidentally, as a member of a minority racial or ethnic group", the Supreme Court of the United States stated:

> "But the fact that these petitioners share attributes common to persons who may have been excluded from residence in the town is an insufficient predicate for the conclusion that petitioners themselves have been excluded, or that the respondents' assertedly illegal actions have violated their rights. Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent. Unless these petitioners can demonstrate the requisite case or controversy between themselves personally and respondents, "none may seek relief on behalf of himself or any other member of the class."

O'Shea v. Littleton, 414 U.S. 488, 494 (1974). See e.g., Bailey v. Patterson, 369 U.S. 31, 32-33 (1962).

> In their complaint, petitioners Ortiz, Reyes, Sinkler and Broadnax alleged in conclusory terms that they are among the persons excluded by respondents' actions. None of them has ever resided in Penfield; each claims at least implicitly that he desires, or has desired, to do so. Each asserts, moreover, that he made some effort, at some time, to locate housing in Penfield that was at once within his means and adequate for his family's needs. Each claims that his efforts proved fruitless. We may assume, as petitioners allege, that respondents' actions have contributed, perhaps substantially, to the cost of housing in Penfield. But there remains the question whether petitioners' inability to locate suitable housing in Penfield reasonable can be said to have resulted, in any concretely demonstrable way, from respondents' alleged constitutional and statutory infractions. Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed. Linda R.S. v. Richard D., 410 U.S. 614 (1973)."

Plaintiffs here all voted; thus, like those plaintiffs in Warth, they cannot show they have been injured. At best, they may be able to show injury to "other identified members of the class to which they belong and which they purport to represent". But these plaintiffs, like the other Warth plaintiffs, could not establish standing because they could not "demonstrate the requisite case or controversy between themselves personally and respondents", nor could they represent a class of people with similar attributes. *

Second, since there was no cognizable injury to these plaintiffs, there was no causal connection between the incident and the conduct of plaintiffs. A losing candidate and his supporters cannot maintain an action simply on the basis that they lost the election. Constitutional issues aside, the Courts would never recover from the backlog. Thus, Mr. Davis' loss cannot be a cognizable injury. Moreover, plaintiffs have failed, certainly in view of the facts, to show a "causal connection" between the incident and the overwhelming 58% to 35%

---

* To the extent that this purports to be a class action on behalf of "plaintiff and other African-Americans and minority voter[s]" of Mount Vernon (¶13), who did not vote on November 6, 2007 because they were allegedly intimidated by one event, the Complaint fails under FRCP 23. Not one of the named plaintiffs in the Complaint is a proper representative of the supposed class, because all of them voted in the election, and they are not appropriate representatives of any non-voters. Thus, the complaint here does not state a class action pursuant to FRCP 23.

loss of Mr. Davis to Mayor Young. The Complaint contains no allegation that the event was responsible for Mr. Davis' defeat. That could hardly be alleged or proved in the face the huge election margin for Mayor Young.

Third, the complaint is bare of any allegation that a new election, without an event similar to that of October 11, 2007 - - the single event plaintiffs have cited -- would produce a different result than the November 6, 2007 general election did. Plaintiffs do not even speculate or allege that the supposed -- but nonexistent --- injury would be "redressed by a favorable decision".

Indeed, there is no way such an assertion or pleading could honestly be made. The 58%-35%, 2653 vote margin, victory of Mayor Young was so overwhelming that there is no likelihood that a new election would yield a different result, and legally there is no basis for such a re-run.

In Simon v. Eastern Kentucky Welfare Rights Org'n, 426 U.S. 26 (1976), the Supreme Court dismissed the complaint, which "suggests no substantial likelihood that victory in this suit would result in respondents' receiving the hospital treatment they desire. A federal court … must require more than respondents have shown before proceeding to the merits." (426 U.S. at 45-46). Similarly, plaintiffs here have not made any showing that without the event the election result would have been different. See, Allen v. Wright, 468 U.S. 737, 104 S. Ct. 3315 (1984).

Like the plaintiffs in Warth (see 422 U.S. at 504), and Simon, these plaintiffs have not alleged and cannot allege facts showing that, absent the event, Mr. Davis would have won the November 6, 2007 general election, or that he would win a new election.

The Warth Court found that: "the facts alleged fail to support an actionable causal relationship between Penfield's zoning practices and petitioners' asserted injury."

"They [petitioners] rely on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents[defendants] acted otherwise, and might improve were the court to afford relief." (422 U.S. at 507)

The plaintiffs here did not and could not in honesty allege that absent the event, Mr. Davis would have won the general election. Unless the election is very close, as in Griffin v. Burns, 570 F.2d 1065 (1st Cir. 1978) ("the closeness of the election was such that, given the retroactive invalidation of a potentially controlling number of votes cast, a new primary was warranted"), there is no likelihood that a different result would have obtained, and thus there is no standing to bring the suit. *

## THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Complaint contains allegations against Mayor Young which are so paper thin as to he transparent, and insufficient to withstand a motion to dismiss. They are made only "upon information and belief". (See ¶¶13, 14, 15, 31, 32). No source is cited for this supposed "information and belief".

No particular acts are alleged against Mayor Young individually. There is no claim that he individually did anything against plaintiffs. There are no allegations that Mayor Young did anything himself in the single event complained of, the October 11, 2007 FBI visit. The complaint alleges that persons acting in the event were "agents for defendant FBI" (¶17). At places it alleges that the FBI was "under the direction of defendant ATTORNEYS" (¶18) which the complaint defines as the United States Attorney's Office (¶6); in another, it alleges that "the FBI acted pursuant to the direction of defendants ATTORNEYS and JUSTICE

---

* For good reason, plaintiffs did not invoke 28 U.S.C. §1344, which allows District Courts to hear and decide the issue of who has received a majority of the votes cast, because Mayor Young received a majority of 2, 653 votes in the November 6, 2007 general election, and this result thus went unchallenged. See, Hubbard v. Ammerman, 465 F.2d 1169, 1180 (5th Cir 1972).

DEPARTMENT" (¶10). It also alleges that "said actions were carried out and condoned by the Defendant FBI, JUSTICE DEPARTMENT and ATTORNEYS, its agents, servant and employees"(¶¶ 43, 51). Unlike the allegations concerning Mayor Young, none of those allegations about the Federal entities was "on information and belief".[*]

Almost the entire supposed "Factual Allegations" section (¶¶17-35) deals with the allegedly acting defendants (¶¶17-31, 33-35)*. In paragraphs 31, and 32, as in the three other paragraphs of the complaint which are directed at Mayor Young and Janet Snyder (¶¶13-15), the allegations against them are "on information and belief". This is particularly fragile and suspect, because no fact is pleaded, and no source – written, verbal or personal – is given for these assertions.

Mayor Young is African-American, as is Mr. Davis. Thus, there is no basis for plaintiffs to contend honestly, as to Mayor Young, that the incident was racially based or aimed at African-American or other minority voters. Or that it was intended to replace an African-American with a non-African-American. Similarly, plaintiffs' unsupported broadside attempting to characterize the incident as one of those "targeted [at] prominent African-American public officials" (¶27) is misguided at best. Mayor Young has long served Mount Vernon and the entire county for twelve years as a County Legislator, and has been elected by his colleagues there to leadership positions. He is and has been without question a "prominent African-American public official."

The notion that defendant Young sought to adversely affect African-American and minority voters, or cause them not to vote, entirely lacks candor, credibility and cognizability, because that would suppress the very vote which had supported him in the past and strongly supported him in this election. Judicial notice can be taken of the unusually heavy vote in Mount

---

[*] * References herein to distinctions in the complaint between Mayor Young and other defendants are not meant to suggest, by any means, that this multi-defective complaint is sufficient and cognizable in any respect against other defendants.

{00059951.DOC.}                                                                                           7

Vernon in 2007, including that in the heavily African-American and minority districts. (See Young affidavit, ¶¶2, 24, 25).

Careful reading of the December 28, 2008 hearing transcript (Exhibit 4 to the Young affidavit), which resulted in denial by Judge P. Kevin Castel of Mr. Jackson's attempt to enjoin the inauguration, reveals that Mr. Jackson <u>never mentioned</u> a "conspiracy" and never even raised Mayor Young's name. Rather, he referred to the FBI, the U.S. Attorney's office, and the Department of Justice (Tr. pp. 13-17).

This again shows that there is no basis for this action against Mayor Young. He (and Ms. Snyder) are a convenient afterthought, for jurisdictional purposes, and a prime purpose was and is to discredit Mayor Young. Attempting to sustain jurisdiction, keeping Mayor Young from being inaugurated, and a re-run election providing another chance for Mr. Davis, were obviously the prime purposes of the suit.

**Using Mayor Young For Jurisdictional Purposes**
**Does Not Present a Cognizable Action**

The FBI and the Justice Department are federal agencies, not state agencies, and the FBI personnel were acting in their federal capacity. They were not acting under color of state law.

Federal law will not take cognizance of alleged civil rights violations against Federal officials acting under color of federal law; those acts are immune, e.g. <u>Cave v. Beame</u>, 433 F. Supp. 172 (E.D.N.Y. 1977); <u>Jones v. District of Columbia</u>, 424 F. Supp. 110 (D.D.C. 1977); (Mayor, Police Chief and Judge of District of Columbia immune for alleged false arrest, assault, etc., by D.C. Police). <u>White v. C.I.R.</u>, 537 F. Supp. 679 (D. Colo. 1982); <u>Brown v. Schlesinger</u>, 365 F. Supp. 1204 (E.D. Va. 1973). Even a mixture of officials is immune. <u>Ginter v. Stallup</u>, 869 F. 2d 384 (8th Circ. 1989). (FBI agents, federal marshals, state troopers, local police officers,

with a search warrant, burned a house to catch a murder fugitive harbored there; held not cognizable).

This is an irreparable flaw when the defendants are all federal personnel acting in their federal capacity. Plaintiffs have attempted an end-run by naming as additional defendants person who are <u>not</u> federal officials acting under color of federal law. That seems to be a prime reason why Mayor Young and Ms. Snyder were included as defendants. The only method of inclusion, since plaintiffs had and have no evidence of any direct involvement, was to allege that Mayor Young and Ms. Snyder "conspirators".

Purporting to link blameless private individuals to actions by governmental officials by means of a "conspiracy" charge, is heinous and sanctionable business. Here Mayor Young has not acted under color of state statute, ordinance, regulation, custom or usage in any conduct of his, and has at all times acted in good faith and within his constitutional rights. See, <u>e.g.</u> <u>Goldsmith v. Mayor and City Council</u>, 845 F.2d 61 (4th Cir. 1988).

The Westchester County and State Board of Elections were not alleged to be involved even indirectly in the event (see complaint ¶¶31, 32, which omit them), and thus were non-factors and of no help to plaintiffs in attempting to overcome this jurisdictional obstacle. And Mayor Young and Ms. Snyder were not, and were not alleged to be, State officials, but rather were private individuals.

To prove a conspiracy between the police and private individuals under §1983, a plaintiff must show an agreement or meeting of the minds to violate constitutional rights, and must show that the individual's actions are fairly attributed to the government. <u>Franklin v. Fox</u>, 312 F.3d 423 (9th Cir. 2002). A simply unsupported allegation that defendants "conspired" is insufficient. <u>Ginter v. Stallup</u>, 869 F2d 834 (8th Cir. 1989).

Plaintiffs' maneuver does not withstand the <u>bona fides</u> or prime purpose tests, and thus the jurisdictional paste cannot save this frivolous action. Trying to legitimize this tactic,

plaintiffs had to resort to the gross suggestion that Clinton Young, an African-American running for Mayor, would and did conspire against African-American and minority voters. They have also stooped to accusing a white Republican Mayoralty candidate of this.

An important question here, amusing only because it is so far fetched and fanciful, is: did or does anyone really believe that Clinton Young and/or Janet Snyder could tell the FBI what to do?

Federal courts have held non-cognizable the claims of candidates losing elections who attributed their issues to pre-election investigations. E.g,. Lahaza v. Azeff, 790 F. Supp. 88 (E.D. Pa. 1992) (plaintiff lost a primary election, alleged that conspiracy to initiate a criminal investigation against him was responsible for loss; held: not cognizable", there is "no federally protected right to win election to public office"); Gersten v. Rundle, 833 F. Supp. 906 (S.D. Fla. 1993), aff'd 56 F.3d 1389, cert. denied 516 U.S. 118, Kaylor v. Fields, 661 F.2d 1177 (8th Circ. 1981); Flinn v. Gordon, 775 F.2d 1551 (11th Cir. 1985), cert. den. 476 U.S. 1116 (1986); Caroll Hubbard for Governor Committee v. Kentucky Registry of Election Finance, 447 F. Supp. 184 (D. Ky. 1979). *

**Inattention To and Rejection of An Injunction,
A Prime Purpose of the Suit, Shows
It Is Non-Cognizable, Frivolous and Moot**

Plaintiffs' principal goal was to enjoin "defendant Board", which the complaint defines to include both the New York State Board of Elections and the Westchester County Board of Elections (¶ 7), from "installing defendant Young in office of the Mayor of the City of Mount Vernon, New York" (¶16). That has already been rejected as frivolous by this Court, and is moot. Mayor Young was inaugurated and installed as Mayor of Mount Vernon on January 1, 2008.

---

* The in terroram, bizarre damage figures which plaintiff includes are as unsupportable as their complaint. They underscore the frivolity and lack of legal basis in the action. They have not alleged or shown any out of pocket expenses or right to any compensatory damages. Punitive damages are not appropriate or statutorily allowed. This is yet another reason for dismissal.

Plaintiffs, by Stephen C. Jackson, Esq., their attorney, in an Order to Show Cause dated December 28, 2007, moved this Court by telephone at 4:45 p.m. that afternoon to stay the inauguration "scheduled for January 1, 2007 [sic. 2008]" pending the "determination and hearing of plaintiffs' motion for an order setting aside the results of the November 6, 2007 Mayoral race". This Court (Hon. D. Kevin Castel, U.S.D.J.), crossed out that request for relief and refused to stay the inauguration, which proceeded on January 1, 2008.

This denial by the Court, and no less plaintiffs' delay and failure to request this injunctive relief until the very eve of the inauguration – December 28, 2008 was the last business day before the inauguration – demonstrates the frivolity of the action, and plaintiffs' lack of <u>bona fides</u> in bringing and pursuing it.

That is also evident in the misstatements, contradictions, lack of notice to defendants, even lack of service of the complaint on defendants, since the November 8, 2007 filing, and plaintiffs' attorney's misstatements and lack of knowledge or caring about critical procedural details, reflected in the transcript of the December 28, 2007 proceedings before Judge Castel. Among other things, Mr. Jackson admitted under questioning that he did not "contact anybody on behalf of Mr. Young with respect to [the] application for a temporary restraining order". (Tr. p. 8). Nor was Janet Snyder, nor were the governmental entities other than perhaps the United States Attorney's office, contacted (Tr. 8-10). Federal Rule of Civil Procedure 65 (a) states that "no preliminary injunction shall be issued without notice to the adverse party." Yet plaintiffs' attorney, an experienced litigator, ignored this requirement and attempted on December 28, 2007, basically without notice, to obtain a preliminary injunction against the inauguration of Mayor Young on January 1, 2008.

The Court there found no "likelihood of irreparable injury" and no demonstration of "a probability of success" justifying such a measure.

The extreme lateness of any action by plaintiffs in this lawsuit is germane.  In <u>Turman v. Duckworth,</u> 68 F. Supp. 744 (D.Ga. 1946), App. Dism. 329 U.S. 675, a Federal Court held it would not intervene to enjoin compliance with Georgia statutes making county unit rule vote applicable to statewide primaries, particularly where the gubernatorial primary had already been held and the application was made too late to have another primary or even a convention.

As noted above, at page 10, Federal courts have been loathe to interfere with or give cognizance to civil rights claims based on third-party investigations at the time of elections.  In <u>Carroll Hubbard for Governor Committee v. Kentucky Registry of Election Finance,</u> 447 F. Supp. 184 (D. Ky. 1979), a candidate's election committee was denied an injunction against a grand jury investigation into its fund raising activities, even where it alleged infringement of federal constitutional rights.

### <u>SANCTIONS AGAINST PLAINTIFFS ARE APPROPRIATE, INCLUDING ATTORNEYS' FEES, COSTS AND EXPENSES</u>

The attorney and the parties who brought this action did not bring it in good faith, and did not conduct a reasonable inquiry into the facts or the law.  The complaint is frivolous, unreasonable, and not well grounded in fact, and legally untenable.  In sum, this is an abusive litigation, all in violation of the standards and requirements of the Federal Rules of Civil Procedure.

FRCP 11's principal goal of deference to, and protection of the judicial process, and relief from the financial burden that this baseless litigation has imposed on Mayor Young, and its secondary goal of compensation, require sanctions here where the complaint is frivolous, unreasonable, and lacking in substance.

It is clear that the prime purposes of this complaint by former Mayor Davis and his supporters were and are keeping Mayor Young from being inaugurated and to obtain a new election for Mayor Davis.  Plaintiffs, without a shred of evidence, and without a single factual

allegation, have brought Mayor Young into this action to tar him in case a new election comes about, and to boost Mr. Davis' stock. Their threat of enjoining the January 1 inauguration and installation of Mayor Young caused havoc, a likely goal of theirs. The issuance of press releases and the granting of newspaper, TV and radio interviews by some plaintiffs and Mr. Jackson, contrasted with what could most generously be called their lack of diligence in serving the complaint, in seeking an injunction, or in notifying defendants of the December 28, 2007 hearing, demonstrate that the prime purpose of the action was to embarrass and hinder Mayor Young, and to cause a new election. Recognizing Mayor Young's overwhelming victory at the polls, they have attempted to clothe the October 11 event in civil rights garb.

In Pierre v. Jordan, 333 F.2d 951 (9th Cir. 1964), cert. denied 379 U.S. 974, reh. den. 380 U.S. 927, it was held that the prime purpose of the suit was not to redress asserted constitutional deprivations, but rather to put a waterworks district out of business, and thus there was no cognizable civil rights action for the courts. And where town officials tried to taint the image of a developer of a mobile home park or apartment building, there was no civil rights conspiracy sufficient to invoke federal jurisdiction. Cloutier v. Town of Epping, 714 F.2d 1184 (1st Cir. 1983).

## Conclusion

For the reasons noted, and those in the affidavit of Mayor Clinton I. Young, Jr., he respectfully requests that this Court: dismiss this frivolous action with prejudice; and upon the

dismissal, award him attorneys' fees and costs; and do other matters the court deems just and proper in the circumstances.

Dated: White Plains, New York
       February 25, 2008

                                                  Respectfully submitted,

                                                  MCCARTHY FINGAR LLP

                                                  William S. Greenawalt
                                                  (WG 0075)
                                                  Attorney for Defendant Clinton Young
                                                  11 Martine Avenue, 12th Floor
                                                  White Plains, New York 10606
                                                  (914) 946-3700

# TABLE OF AUTHORITIES

| CASES | PAGE |
|---|---|
| Allen v. Wright, 468 U.S. 737, 751 (1984) | 5 |
| Brown v. Schlesinger, 365 F. Supp. 1204 (E.D. Va. 1973) | 8 |
| Cave v. Beame, 433 F. Supp. 172 (E.D.N.Y. 1977) | 8 |
| Cloutier v. Town of Epping, 597 F. Supp. 1232 (D.N.H. 1982), aff'd 714 F. 2d 1184 (1st Cir. 1983) | 13 |
| Flinn v. Gordon, 775 F.2d 1551 (11th Cir. 1985) cert. den. 476 U.S. 1116 (1986) | 10 |
| Franklin v. Fox, 312 F. 3d 423 (9th Cir. 2002) | 9 |
| Gersten v. Rundle, 833 F. Supp. 906 (S.D. Fla. 1993), aff'd. 56 F. 3d, 1389, cert. den. 516 U.S. 1118 | 10 |
| Ginter v. Stallup, 869 F. 2d 384 (8th Cir. 1989) | 8, 9 |
| Griffin v. Burns, 570 F.2d 1065 (1st Div. 1978) | 6 |
| Goldsmith v. Mayor and City Council, 845 F. 2d 61 (4th Cir. 1988) | 9 |
| Hubbard v. Ammerman, 465 F. 2d 1169 (5th Cir. 1972) cert. den. 410 U.S. 910 | 6 |
| Carroll Hubbard for Governor Committee v. Kentucky Registry of Election Finance, 447 F. Supp. 184 (D. Ky. 1979) | 10, 12 |
| Jones v. District of Columbia, 424 F. Supp. 110 (D.D.C. 1977) | 8 |
| Kaylor v. Fields, 661 F. 2d 1177 (8th Circ. 1981) | 10 |
| Lahaza v. Azeff, 790 F. Supp. 88 (E.D. Pa. 1992) | 10 |
| Lujan v. Defenders of Wildlife, 504 U.S 555, 560, 561 (1992) | 2 |
| Pierre v. Jordan, 333 F. 2d 951 (9th Circ. 1964) cert. den. 379 U.S. 974, reh. den 380 U.S. 927 | 13 |

Simon v. Eastern Kentucky Welfare Rights Org'n,
426 U.S. 26 (1976)                                              5
Turman v. Duckworth, 68 F. Supp. 744 (D. Ga. 1946)
App. Dism. 329 U.S. 675                                         12

Warth v. Seldin, 422 U.S. 490 (1975)                            3, 4, 5

White v. C.I.R., 537 F. Supp. 679 (D. Colo 1982)                8

## STATUES AND AUTHORITIES

28 U.S.C. §1331                                                 1 n

28 U.S.C. §1341 (3) (4)                                         1 n

28 U.S.C. §1343 (3) (4)                                         1 n

28 U.S.C. § 1344                                                6 n

42 U.S.C. §1981, 1982, 1983                                     3


Federal Rules of Civil Procedures

11                                                              12

12 (b) (1)                                                      1

12 (b) (6)                                                      1

23                                                              4 n

65 (a)                                                          11

{00060412.DOC.}