UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERNEST DAVIS, RAYMOND COPELAND JR.,
RAY COPELAND SR., KOHAIN NATANY,
A HALEVI,THOMAS L. TERRY,
VALERIE CAMPBELL, OSCAR DAVIS JR., MARLENE      **MEMORANDUM**
PIEROT, ANGELO SQUITIERI, MARIA ELLIS, DAVIS    **OF LAW**
WILLIAMS,

                                                **CV No.: 07-9897**

                                     Plaintiffs,


               -against-

MICHAEL J. GARCIA, UNITED STATES ATTORNEY FOR THE
SOUTHERN DISTRICT, UNITED STATES JUSTICE DEPARTMENT,
FEDERAL BUREAU OF INVESTIGATION, UNITED STATES
ATTORNEY'S OFFICE, UNITED STATES ATTORNEYS
OFFICE OF THE SOUTHERN DISTRICT OF NEW YORK,
NEW YORK STATE BOARD OF ELECTIONS,
WESTCHESTER COUNTY BOARD OF ELECTIONS,
CLINTON YOUNG, JANET SNYDER, JOHN
DOE FEDERAL BUREAU OF INVESTIGATION AGENTS
1-10,

                                                Defendants.
------------------------------------------------------------------------X


# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Preliminary Statement

Plaintiffs, an African American former mayor of the city of Mount Vernon, New York and various duly registered voters of the County of Westchester, of brought this action alleging that defendants violated their civil rights and voting rights. Defendants, actions in conducting an unwarranted and highly publicized raid by the F.B.I. and unreasonable search and seizure on the plaintiff Mayor's offices approximately three weeks prior to the general election unlawfully diluted, denied, discouraged and intimidated Mount Vernon African American registered voters and thereby violated the Voting Rights Act of 1965, 42 U.S.C. § 1973 ,42 U.S.C. § 1983 and the Federal Tort Claims Act, 28 U.S.C. S 2680(h) . Plaintiffs seek monetary damages as well as an order requiring defendants New York and Westchester County Board of elections to hold a new mayoral election.

Section 2 of the Voting Rights Act prohibits the implementation of "any standard, practice, or procedure" which "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or membership in a language minority group. Id. § 1973(a).

Plaintiffs' Complaint and Amended Complaint alleges that the aforesaid action of defendants' violated Section 2 of the Voting Rights Act because it diluted the votes of Mount Vernon African American citizens who would have supported plaintiff Davis but were intimidated from participating in the general election because of the highly publicized media reports of the unwarranted pre election FBI raid.

Additionally, the defendants' unreasonable search and seizure of Mayor's offices constituted a violation of plaintiff Davis' civil rights pursuant to 42 U.S.C. § 1983 and the

Federal Tort Claims Act, 28 U.S.C. S 2680(h).

## Background

On May 12, 2006 defendant U.S Attorney's Office issued a press release announcing that they would begin investigation certain political office holders in the New York area for supposed corruption activities. ( Pl. Ex. D  12/28/07 Order to Show Cause.)  Almost a year and a half later, on October 11, 2007, and approximately three weeks prior to the November 6, 2007 general election, agents for defendant FBI, under the guise of investigating alleged improprieties in city trash-hauling contracts, engaged in a highly publicized raid of  incumbent Mayor Ernie Davis' City Hall offices in Mount Vernon, New York.

The FBI,  under the direction of defendants Michael Garcia and the U. S. Attorney's Office, stormed into the hall offices and rifled through file cabinets and other receptacles. They removed several boxes of items purportedly confiscated in the raid in view of television news cameras of media outlets who were notified by defendants.

Even though defendants had ample time prior to the election to conduct a discrete search  they chose instead to wait until three weeks before the election to proceed on a search warrant . Plaintiffs believe that defendant Young, plaintiff's opposition in the subject mayoral race, and his political surrogates maintained inappropriate influence with the federal defendants in light of  purported personal and political relationships with federal employees close to the investigation of the mayor's office. Defendants knew that such overt action occurring on a date in close proximity to the November 6, 2007 general election in which the incumbent African American was a candidate for reelection would

intimidate and dissuade voters from supporting the Davis re-election bid, obviously benefiting defendant Young..

Such action by defendants, in carrying out a specious overt investigative action relating to a public official in close proximity to an election was contrary to the Department of Justice's expressed policy. As a noted in a recent *Boston Globe* article about the policy in the United States Attorney Manual: "A 1995 Justice election crime manual says 'federal prosecutors . . . should be extremely careful not to conduct overt investigations during the pre-election period' to avoid 'chilling legitimate voting and campaign activities' and causing 'the investigation itself to become a campaign issue.'" [1] The manual even went so far as to emphasize the importance of this policy by underlining the following provision: "most, if not all, investigation of alleged election crime must await the end of the election to which the allegation relates." [2]

The manual makes it clear that inasmuch as U.S. Attorneys were assigned to matters involving political figures and the process of voting, they were not to take any action that could have the possibility of affecting the election. Deviations from this policy has caused some connected to the Justice Department to question the farness and integrity of the agency. [3]

A significant number of African American voters, including some plaintiffs, were in fact intimated and dissuaded from exercising their right of franchise. Consequently, the

---

[1] Boston Globe, Charlie Savage, Globe Staff | May 6, 2007

[2] id.

[3] May 9, 2007 by J. Gerald Hebert The Explanation Can Be Worse Than The Offense Itself / Campaign Legal Center

African American vote in the election was suppressed and inhibited.

Defendants knew that such a raid on city hall offices would attract significant media coverage and the attention of the public and would intimidate, unduly influence and dissuade voters from supporting the reelection of plaintiff Davis. There were no emergency or exigent circumstances supporting defendants' decision to raid Mayor Davis' offices only three weeks preceding the election.

Additionally, the October 11, 2008 raid violated of plaintiff Davis' right against unreasonable search an seizure. No evidence of criminality relating to plaintiff Davis was unearthed as a result of the raid. To date, plaintiff Davis has not been charged with any crime or offense. Yet, defendants persisted in pressing an overt investigation that, at least with respect to plaintiff Davis, was baseless and unsupported by the fruits of the raid.

.       The aforesaid action by defendants was the result of a politically and racially motivated scheme to undermine the candidacy of an African American incumbent Mayor with a long record of service. More importantly, defendants sought to intimidate, suppress, negate, dilute and otherwise unlawfully effect the right of franchise of plaintiffs and other African American voters. Defendants actions in fact caused the suppression of votes in the November 6, 2007 general election. Additionally, defendants' action subjected plaintiff Davis to an unreasonable search and seizure, and abuse of process. Moreover, the federal defendants actions constituted a violation of the Federal Tort Claims Act.[4]

---

[4] 28 U.S.C. S 2680(h)

## ARGUMENT

## POINT I

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY

In determining a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the factual allegations of the complaint and we read it liberally, drawing all reasonable inferences in favor of the plaintiff. PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1197-98 (2d Cir. 1996).

It is settled law "that 'the United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."' Lehman v. Nakshian, 453 U.S. 156, 160, 69 L. Ed. 2d 548, 101 S. Ct. 2698 (1981)

Plaintiffs in this action seek damages from the various federal officials. The qualified immunity doctrine protects government officials from suits seeking to impose personal liability for money damages based on unsettled rights or on conduct that was not objectively unreasonable, and reduces "the general costs of subjecting officials to the risks of trial--distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985)

A defendant is not entitled to qualified immunity on a motion to dismiss if the allegations of the complaint "state a claim of violation of clearly established law." Behrens v. Pelletier, 516 U.S. 299, 306, 116 S. Ct. 834, 839, 133 L. Ed. 2d 773 (1996)

(internal quotation marks omitted) (quoting Mitchell, 472 U.S. at 526, 105 S. Ct. at 2815). Qualified immunity shields officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

**A. PLAINTIFFS' "BIVENS" CLAIMS**

As stated, actions for damages are generally not available against the United States, federal agencies, or individual officers of the United States. However, the Supreme Court held that the victim of a Fourth Amendment violation by federal officers could bring suit for money damages against the officers in federal court. See Bivens v Six Unknown Federal Bureau of Narcotics, 403 U.S. 388 (1971).

So-called "Bivens actions" for damages against federal officers have subsequently been permitted for violations of the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 60 L. Ed. 2d 846, 99 S. Ct. 2264 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 64 L. Ed. 2d 15, 100 S. Ct. 1468 (1980). Bivens affords a remedy against only federal officials and precludes actions against federal agencies. See 510 U.S. 471, 485, 486, 114 S. Ct. 996, 127 L. Ed. 2d 308

Plaintiffs allege various claims under Bivens, Plaintiffs submit that an infringement of a person's right to vote is a violation of a fundamental right and thus should be proscribed under Bivens. Plaintiffs believe this contention is one of first impression.

**1. Federal Defendants Colluded with Defendant Young and Young Surrogates to Violate Plaintiffs' Rights Pursuant to the Voting Rights Act of 1965 and 42 U.S.C. S 1983**

The right to vote is a "fundamental political right." Yick Wo v. Hopkins 118 U.S. 356, 370 (1886). This right is "denied by a debasement or dilution of the weight of a citizens vote just as effectively as by wholly prohibiting the free exercise of the franchise." Reynolds v. Sims, 377 U.S. 533, 554 (1964). As the Supreme Court in Reynolds noted, "The conception of political equality ... can mean only one thing - one-person, one-vote. The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions." Id. at 557-58 (internal citations omitted).

To the extent that the court finds the collaboration of the defendants in orchestrating the overt raid in close proximity to the election constituted a scheme to intimidate and discourage voters from participating at the polls, it could find that they created a cause of action under 42 U.S.C. S 1983 as well as violate the Voting Rights Act of 1965. Voting is a fundamental right that cannot be subject to arbitrary or inconsistent treatment. See, e.g., Harper v. Virginia, 383 U.S. 663 (1966); Reynolds v. Sims, 379 U.S. 870 (1964)

Plaintiffs assert other claims under Bivens. Plaintiffs contend that the actions described in plaintiff's pleadings constitute claims for abuse of process and unreasonable search and seizure.

**2. Defendants' Abuse of Process Constituted a Violation under 42. U.S.C sec. 1983**

An abuse of process can be established against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with

intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Executing a search warrant at plaintiff's offices during an overt investigation shortly before an election satisfies the first prong. Plaintiffs contend that the second and third elements are shown by defendants' specious timing of the raid designed to suppress votes for plaintiff Davis and cause him removal from office. Defendants' objectives in pursuing a warrant at that time had no relation to any contemplated charges of criminality involving plaintiff Davis yet defendants public characterization of the incident clearly suggested wrong doing on the his part. Defendant U.S. Attorney's deviation from its expressed policy eschewing overt investigations close to elections, the expected likelihood of unconstitutionally influencing the electoral process notwithstanding, betrays an invidious and ulterior motive.

Plaintiffs allege that defendants acted with improper purpose, as opposed to merely an improper motive. See, Suffield Dev. Assocs. Ltd. P'ship v. Nat'l Loan Investors, L.P., 260 Conn. 766, 802 A.2d 44, 48 (Conn. 2002) ("The gravamen of the action for abuse of process is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed.") (quoting Mozzochi v. Beck, 204 Conn. 490, 529 A.2d 171, 173 (Conn. 1987)

Defendants' anticipated assertion that indictments, and presumptive probable cause, obtained against unrelated parties subsequent to the commencement of this action does not absolve defendants. The absence of probable cause is an essential element of a false arrest claim, Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003), however, liability for abuse of process does not require a showing of the lack of probable cause,

Shain v. Ellison, 273 F.3d 56, 68 (2d Cir. 2001); Am. Jur. 2d, False Imprisonment § 4 (2001).

**3. Illegal Search and Seizure**

Plaintiff Davis had a reasonable expectation of privacy within the confines of his offices. The search of Davis offices under the circumstances described herein violated his Fourth Amendment right against unreasonable search and seizure. See, Rakas v. Illinois, 439 U.S. 128 (1978)

**POINT II**

**THE FEDERAL DEFENDANTS VIOLATED THE
FEDERAL TORT CLAIMS ACT**

.      Plaintiffs contend that the allegations set forth in their pleadings establish claims under the Federal Torts Claims Act.(FTCA) 28 U.S.C. S 2680(h).To the extent that the court construes plaintiff's pleadings insufficient or vague to sufficiently set forth a violation of the above act, plaintiff's respectfully request leave to amend the pleadings.

28 U.S.C. S 2680(h) provides that the government is not liable when any of its agents commits the torts of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. However, it provides an exception if a law enforcement officer commits assault, battery, false imprisonment, false arrest, *abuse of process,* or malicious prosecution .Emphasis supplied.   Id. Plaintiffs allege violative conduct by federal law

enforcement officials in their pleadings.[5]

FTCA claims must allege an "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government."  The FTCA applies in "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see 28 U.S.C. § 2674 (United States liable "in the same manner and to the same extent as a private individual under like circumstances"); Feres v. United States, 340 U.S. 135, 141, (1950); Chen v. United States, 854 F.2d 622, 626 (2d Cir. 1988).  The malicious abuse of process and unlawful search and seizure subjected to plaintiff Davis constituted an injury and private individuals would be liable under like circumstances.

## POINT III

### THE PRIVATE INDIVDUAL DEFENDANTS CONSPIRED WITH THE FEDERAL DEFENDANTS TO VIOLATE PLAINTIFFS' RIGHTS UNDER 42 U.S.C. § 1983

Plaintiffs allege in their pleadings that defendant Young colluded and conspired with the federal defendants to violate plaintiffs civil rights. Plaintiffs contend that defendant Young and political surrogates of Young maintained inappropriate relationships with various employees of the federal defendants involved in the Mayor Davis' offices. Plaintiffs contend that defendant Young and his surrogates influenced the decision to execute an overt seizure of documents from the incumbent mayors office

---

[5] See Plaintiffs. Complaint, Amended Complaint and Second Amended Complaint

close to the election.

A private individual may be liable under § 1983 if he conspired or entered joint action with a state actor. Radcliffe v. Rainbow Constr. Co., 254 F.3d 772, 783 (9th Cir.), cert. denied, ___ U.S. ___, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001). To prove a conspiracy between the FBI and defendant Young under § 1983, plaintiffs must show "an agreement or `meeting of the minds' to violate constitutional rights." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir.1989)  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Id. at 1541.

Plaintiffs will establish a meeting of the minds between defendant Young and the federal defendants to violate plaintiffs right of franchise and civil rights.  See, Franklin v. Fox, 312 f.3d 423

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that defendants motion to dismiss be denied or, in the alternative, request leave to further amend the pleadings to cure any defects the court deems necessary.

Dated: New York, New York
April 14, 2008

Respectfully submitted,

Stephen C. Jackson
Attorney for Plaintiffs
350 Fifth Avenue, Suite 310
New York, New York 10118

(212) 643-2394

By:---------------------------------------
    Stephen C. Jackson

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ERNEST DAVIS, RAYMOND COPELAND JR.,
RAY COPELAND SR., KOHAIN NATANY,
A HALEVI, THOMAS L. TERRY,
VALERIE CAMPBELL, OSCAR DAVIS JR., MARLENE      **MEMORANDUM**
PIEROT, ANGELO SQUITIERI, MARIA ELLIS, DAVIS    **OF LAW**
WILLIAMS,

                                        CV No.: 07-9897

                          Plaintiffs,

         -against-

MICHAEL J. GARCIA, UNITED STATES ATTORNEY FOR THE
SOUTHERN DISTRICT UNITED STATES JUSTICE DEPARTMENT,
FEDERAL BUREAU OF INVESTIGATION, UNITED STATES
ATTORNEY'S OFFICE, UNITED STATES ATTORNEYS
OFFICE OF THE SOUTHERN DISTRICT OF NEW YORK,
NEW YORK STATE BOARD OF ELECTIONS,
WESTCHESTER COUNTY BOARD OF ELECTIONS,
CLINTON YOUNG, JANET SNYDER, JOHN
DOE FEDERAL BUREAU OF INVESTIGATION AGENTS
1-10,

                                      Defendants.
------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION FOR A PRELIMINARY INJUNCTION

                                  **STEPHEN C. JACKSON**
                                  **Attorney for Plaintiffs**
                                  **350 Fifth Avenue, Suite 2310**
                                  **New York, New York 10118**
                                  **(212) 643-2394**